## Commonwealth v. Hamilton.

*Criminal law—Involuntary manslaughter—Negligence—Gross negligence —Automobiles—Turning corner and running on sidewalk.*

1. At common law and under the law of Pennsylvania no particular degree of negligence is necessary to make out the crime of involuntary manslaughter, where death ensues as the result thereof.

2. Gross negligence is not an essential ingredient of such offence.

3. If the driver of a motor-truck drives in such a way that the truck is unable to remain on the roadway, by reason of its speed, while making a turn, and kills a child on the sidewalk, he may be convicted of involuntary manslaughter.

Motion for a new trial. Q. S. Phila. Co., Dec. Sess., 1922, No. 211.

*L. B. Schofield,* Assistant District Attorney, for Commonwealth.

*C. W. Roberts,* for defendant.

GORDON, J., May 29, 1923.—The defendant was convicted (with a recommendation of mercy) of involuntary manslaughter in connection with the killing of Anthony L. Pote, Jr., a child fourteen years old, by an automobile at the corner of Aramingo and Dauphin Streets, in the City of Philadelphia.

The case is now before us on motion for a new trial. The only ground upon which a new trial is asked is that the charge of the court did not correctly define the degree of negligence requisite to sustain a conviction for involuntary manslaughter. It is earnestly urged upon us by counsel for the defendant that gross negligence is an essential ingredient of that offence. We cannot agree with this contention.

Before discussing the law of involuntary manslaughter, it will be well to state briefly the facts upon which the Commonwealth relied for a conviction in this case. It appears that on the afternoon of Nov. 2, 1922, the deceased was playing marbles on the sidewalk at the northwest corner of Aramingo and Dauphin Streets. The defendant was operating a five-ton truck, loaded with 14,000 pounds of sand, in a northerly direction on Aramingo Street. When he reached the intersection of this street with Dauphin Street, he attempted to turn west on Dauphin Street. The evidence as to the speed at which the defendant was operating his truck on the turn is not definite and

3 D. & C.

somewhat in dispute. There was sufficient for the jury to find that, though not going very fast, the truck was unable to remain on the roadway, by reason of its speed, while making the turn. There is also evidence indicating that a Ford truck may have been coming east on Dauphin Street, approaching Aramingo Street on the north or wrong side of Dauphin Street. Whatever may have been the real situation, there was ample evidence for the jury to find that the truck which the defendant was driving was not under complete control as he attempted to turn from Aramingo Street into Dauphin Street. Instead of remaining in the roadway, the truck struck the curb and went up on to the sidewalk. It knocked the child down and ran over it, killing it, practically, instantly. There was also evidence that the driver either did not or could not stop for a distance of about thirty feet after the truck had collided with the child.

We charged the jury that they might convict the defendant if they believed beyond a reasonable doubt that the deceased came to his death as a result of the negligent operation of the truck. The defendant complains that the jury should have been told in substance that there could be no conviction unless they were satisfied that death was brought about by gross negligence on his part. The question of the degree of negligence requisite to sustain a conviction of involuntary manslaughter is not free from difficulty. The authorities outside of this State are not in accord, and no case has been called to our attention in which this question has been directly raised and decided in Pennsylvania.

Counsel for the defendant has cited the cases of Com. v. Le Flem, 16 Dist. R. 13, and Com. v. Troop, 4 Berks Co. L. J. 300, in support of his contention that gross and wanton negligence is essential to a conviction for this offence. In neither of those cases was this question before the court. In the former, which was an opinion by Judge Wiltbank, of this county, the question raised was the admissibility of reputation evidence in a prosecution for involuntary manslaughter. In discussing that question, the court assumed that "gross and inhuman" recklessness was necessary to sustain a conviction. In the last cited case, the trial judge had so charged the jury and the case was before the court on a rule for a new trial. One of the grounds presented was the refusal of the trial judge to affirm a point for charge submitted by the defendant. The point laid down the principle of gross negligence as an element of involuntary manslaughter. The court decided that the refusal of this point was not error, because it had been fully embodied in the charge. It will be seen that in neither of those cases was the question raised. In the first, it was not essential to a determination of the issue before the court, and was, therefore, not passed upon. In the second, the defendant was not harmed by the refusal of his point, and the reviewing court was not called upon to, and did not, decide the question.

We are of the opinion that, under the common law and the law of Pennsylvania to-day, no particular degree of negligence is necessary to make out the crime of involuntary manslaughter, where death ensues as the result thereof. The Act of March 31, 1860, P. L. 382, 403, in section 79, provides that: "If any person shall be charged with involuntary manslaughter, happening in consequence of an unlawful act, it shall and may be lawful for the district attorney, with the leave of the court, to waive the felony and to proceed against and to charge such person with a misdemeanor, etc." This is the section which creates the offence of involuntary manslaugher as a distinct and separate offence from manslaughter as it existed at common law. The Criminal Code did not create new kinds of homicide. It merely divided the various grades of unlawful killings as they existed at common law into four classes: First degree

murder; second degree murder; voluntary and involuntary manslaughter. As was said by Mr. Chief Justice Tilghman, in Com. v. Gable, 7 S. & R. 423: . . . "no definition is given of voluntary or involuntary manslaughter; of course, they are considered as crimes whose nature was previously ascertained, and we are to seek for their definition in books of the best authority."

In discussing the offence of involuntary manslaughter, Blackstone, at page 192 of the fourth book, says: "So where a person does an act lawful in itself, but in an unlawful manner, and without due caution and circumspection, as when a workman flings down a stone or a piece of timber into the street and kills a man, this may be either misadventure, manslaughter or murder, according to the circumstances under which the original act was done. If it were in a country village where few passengers are, and he calls out to all people to have a care, it is misadventure only; but if it were in London, or other populous town, where people are continually passing, it is manslaughter, though he gives loud warning, and murder, if he knows of their passing and gives no warning at all, for then it is malice against all mankind. And, in general, when an involuntary killing happens in consequence of an unlawful act, it will be either murder or manslaughter, according to the nature of the act which occasioned it. If it be in prosecution of a felonious intent, or if its consequences naturally tended to bloodshed, it will be murder; but if no more was intended than a mere civil trespass, it will only amount to manslaughter."

Here we do not find that any degree of negligence in particular is requisite for conviction of this offence. The language "without due caution and circumspection" is general and is descriptive of ordinary negligence. In the case of Com. v. Gable, 7 S. & R. 423, the above quotation from Blackstone is cited and no reference is made to gross negligence. In the case of Com. v. Bilderback, 2 Parsons Select Equity Cases, 452, the court charged the jury as follows: "It would, then, seem that the defendants were engaged in a lawful pursuit, and conducting it in a lawful manner. It is now for you to inquire whether, while they were thus employed, did they exercise proper and ordinary caution? While steering the steamboat down the river, did they see the batteau crossing the line of the Edward? Might the pilot have seen it if proper circumspection had been exercised by him? Were the defendants using that care and caution which is generally manifested and which the law requires should be exercised by those who navigate the stream? If you should think they were, then it would not be proper to adjudge them guilty of a criminal act."

In both of those cases simple negligence was held sufficient to sustain a conviction of involuntary manslaughter. This appears to us to be the better rule, and to be consonant with the fundamental idea underlying the offence. Gross negligence is requisite in cases of assault and battery in which the basis of the charge is a battery by negligence. The reason for this is that the common law offence of assault and battery involves the idea of an intentional battery, and the criminal intent is supplied only when the negligence is so gross and wanton as to give rise to the inference of malice. An assault and battery of this character terminating in death would sustain a conviction of murder in the second degree, for such negligence implies the malice essential in murder. Human life is not to be endangered by the negligent acts of others. The criminal law does not demand of the citizen a high or unusual degree of care. Ordinary care under the circumstances—the care which the average man of ordinary prudence exercises—is all that is required. This is not unduly exacting; and life is not to be destroyed by the negligent omis-

sion of such care. It is the duty of persons operating automobiles on the highway to be vigilant that their engines do not endanger the lives of others, and it is reasonable to require that ordinary care should be exercised by drivers and to hold them responsible for their failure to do so.

We see no error in our charge in this respect, and as it is the only ground upon which a new trial is asked, the motion is dismissed.